IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.:

| | |
|---|---|
| ANTHONY K. GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT FOR RACE |
| v. ) | DISCRIMINATION, DISABILITY |
| ) | DISCRIMINATION AND |
| O.B. BUILDERS, Inc. ) | WRONGFUL DISCHARGE |
| ) | |
| Defendant. ) | |
| _____ ) | |

## JURISDICTION AND VENUE

1. This action is instituted and authorized pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") as amended by the Civil Rights Act of 1991 and set forth in 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 (Reconstruction Era Statutes), The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 and § 12117 as amended, ADA Amendments Act of 2008, and North Carolina law.

2. All of the unlawful employment practices and the termination complained of were committed by the Defendant.

## PARTIES

3. Plaintiff is a citizen and resident of Stanly County, North Carolina.

4. Defendant is a corporation, incorporated and existing under and by virtue of the laws of the State of North Carolina with its principal place of business in Cabarrus County, North Carolina.

5. Defendant employs in excess of 50 employees.

6. Defendant is an employer within the meaning of the Title VII, ADA and North Carolina law.

1

## ADMINISTRATIVE PROCEDURE

7. Plaintiff has satisfied all private administrative and judicial prerequisites prior to the commencement of this action.

8. Plaintiff received by mail an Equal Employment Opportunity Commission ("EEOC") Notice of Right to Sue (Conciliation Failure), Charge No. 430-2016-02166 dated October 31, 2017 from the EEOC. (attached as Exhibit 1)

9. Plaintiff timely filed a Charge of Discrimination with the EEOC designated as EEOC Charge No. 430-2016-02166. (attached as Exhibit 2)

## FACTUAL ALLEGATIONS

10. Plaintiff (black male) was employed by Defendant on or about March 2013 as a Door Builder.

11. Plaintiff was improperly terminated on or about August 25, 2016.

12. The Plaintiff was hired by Shop Supervisor, Ashley Hein ("Hein") (white male) and General Manager, Casey Williams ("Williams") (white male).

13. The Plaintiff was terminated by Defendant owner, Bryan K. Dauzat ("Dauzat") (white male).

14. Since the Plaintiff began employment in 2013 until Plaintiff's termination on August 25, 2016, Plaintiff was one of only two black employees working for Defendant from 2013 through 2016.

15. Plaintiff was the only black employee at the Defendant's Cabarrus location.

16. The Defendant maintained in excess of eighty (80) employees.

17. Plaintiff worked for Defendant in Cabarrus County, North Carolina.

18. Defendant's duly authorized owner, agents, employees, supervisors, managers or officers were, at all relevant times, acting for and on behalf of Defendant and within the course and scope of their authority.

19. On or about February 2016, Plaintiff suffered an on the job injury to Plaintiff's back and knees and returned to work three days later with a physician restriction of no lifting over 25 pounds and a no bending restriction.

20. The Defendant instructed the Plaintiff to seek medical treatment from Plaintiff's physician instead of filing a Workers' Compensation claim.

21. The Defendant required that the Plaintiff provide Defendant medical updates, including copies of physician notes and provide monthly drug test results.

22. Plaintiff provided Defendant Plaintiff's restricted duty work instructions from Plaintiff's physician.

23. Defendant continued to require Plaintiff to load doors onto trucks in violation of Plaintiff's light duty work restrictions.

24. On or about December 2015, Installer for Defendant, Ronnie Eudy ("Eudy") (white male) called the Plaintiff a nigger.

25. The V.P. for Defendant, Dewain Desselle ("Desselle") (white male) moved Eudy to the race shop because of the racial slurs.

26. In reference to a white male employee playing rap music, the owner of Defendant and Plaintiff's superiors stated several times in the work place "that nigger shit has to go" in reference to certain music being played.

27. The Defendant's General Manager, Williams was heard saying "I will be glad when that nigger is gone."

28. Williams ordered steel toe boots for all the employees except Plaintiff. Williams stated Defendant did not order Plaintiff boots because his feet were too big. Eventually, boots were ordered for the Plaintiff at a time much later than when the white employees received their boots.
29. When the owner of the Defendant, Dauzat issued passes to the employees for a weekend car race and needed to know the number of tickets to provide, Dauzat responded and stated "well not Anthony cause black people don't like the race."
30. Defendant Installer Eudy stated multiple times in the workplace "I can't stand that nigger, I don't know why they keep that nigger working here."
31. The Plaintiff requested heaters for the shop in excess of 10 times and was denied but when a white male employee made a request for heaters for the shop, they were provided within a week.
32. The Defendant's stated reason for terminating Plaintiff's employment on August 25, 2016 was because Defendant heard that Plaintiff was selling drugs and they were moving in a different direction.
33. Plaintiff does not use drugs, has never been charged or convicted of any drug use and has never sold illegal drugs.
34. General Manager Williams had witnessed two white male employees smoking marijuana in the building in the Air Compressor room and he just told them not to do it again. The two white male employees received no discipline in any way, were not "written up" and not terminated.

35. Two white male employees would sit in their car under the Defendant's surveillance camera smoking marijuana on a daily basis and their Defendant superiors, including Williams did not discipline them in any way and their employment was not terminated.

36. There were two white male employees who would go to the methadone clinic every day and then report to work and no disciplinary action was ever taken.

37. During a 16 hour work shift, a white male employee passed out drunk on a table. Other employees were also drinking during the work shift and the superiors were notified but no disciplinary action was taken.

38. No disciplinary action was ever taken against the owner, general manager, supervisors and installers for their use of the term nigger in the workplace.

39. Several witnesses have stated under oath that they were asked by the Defendant if they would agree to make false statements against Plaintiff in an attempt to conceal and defend against Defendant's discriminatory and wrongful termination of Plaintiff.

40. A witness has stated under oath that the Defendant requested to know how much it would cost for the witness to state that he had witnessed the Plaintiff selling drugs.

41. Several witnesses have stated under oath that they have never heard of or seen the Plaintiff use or sell illegal drugs.

42. A white male employee was accused of selling cocaine and told by Defendant that he could keep his job as long as Defendant never heard it again.

43. The Defendant terminated the Plaintiff's employment because Plaintiff is a disabled black employee and the Defendant replaced Plaintiff's employment with a non-disabled white male.

5

44. Plaintiff had an exemplary record with Defendant and Plaintiff always received good performance reviews.

45. On or about August 25, 2016, Defendant terminated Plaintiff.

46. Plaintiff suffers from medical conditions and has a physical impairment which causes substantial limitations upon his major life activities including but not limited to standing, sitting, walking, lifting and performing manual tasks, within the meaning of the ADA.

47. As a result of Plaintiff's physical impairment, Plaintiff has substantial limitations upon the major life activities set forth above within the meaning of the ADA.

48. Plaintiff has a history of having a physical impairment which substantially limits his major life activity set forth above.

49. Plaintiff is regarded by others and regarded by the Defendant as having a physical impairment that substantially limits the major life activities set forth above.

50. Despite his disabilities, Plaintiff is able to perform all of the essential functions of his job with reasonable accommodations.

51. Plaintiff is a "qualified individual with a disability" within the meaning of § 101(a) if the Americans with Disability Act, 42 U.S.C. § 1211(a) because of substantial limitations on his major life activities as set forth above.

52. Plaintiff was "regarded as" having a disability by his employer within the meaning of the ADA.

53. Plaintiff's employment was wrongfully terminated and he was discriminated against based upon his race, disability and retaliated against by the Defendant.

6

54. While employed with the Defendant, the Plaintiff's job performance had always met or exceeded the Defendant's employment standards and the Plaintiff was adequately performing and meeting all job performance standards of the Defendant as documented.
55. Plaintiff's requested and the Defendant failed to provide the Plaintiff reasonable accommodations for his disability as set forth herein.
56. Defendant intentionally failed to provide reasonable accommodations for Plaintiff's disability and disciplined and terminated Plaintiff based on his disability when Defendant was aware that Plaintiff was on medical restrictions as instructed by a health care provider.
57. Defendant's application of its purported policies as applied to the Plaintiff and not to Defendant's white employees was not reasonable and resulted in Defendant's pre-textual reasons for the Plaintiff's termination.
58. Defendant's activities are direct evidence of race employment discrimination.
59. Other similarly situated employees of Defendant who were not members of Plaintiff's protected classifications who have allegedly committed the same or similar or more serious alleged offenses have been treated more favorably than the Plaintiff and not terminated and/or disciplined in any way.
60. The Defendant's stated reason for the Plaintiff's termination, that the Plaintiff allegedly had sold drugs is a ploy used by the Defendant to terminate the Plaintiff's employment because of Plaintiff's race (black), disability and in retaliation for Plaintiff exercising federally protected rights.

61. Upon information and belief, the Defendant has a progress disciplinary policy which was not adhered to with regard to Plaintiff's employment termination and was not cited by the Defendant when terminating Plaintiff's employment.

62. The Plaintiff's employment replacement was an employee who is white and who is not disabled.

63. Plaintiff's previous job duties and functions are now performed by white employees of the Defendant who have no disability.

64. As a result of being terminated, Plaintiff has lost his income, benefits, and other losses as determined by the Court.

65. As a result of the actions of Defendant as described herein the Plaintiff is entitled to damages in an amount greater than $10,000.00.

## VIOLATION OF TITLE VII

66. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 65 in support of this claim for relief.

67. The actions of Defendant as set forth herein, constitute intentional discrimination against Plaintiff on the basis of his race, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 A(a)(1).

68. Defendant engaged in discriminatory practices against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from racial discrimination in the workplace, as set forth in 42 U.S.C. § 1981 A(b)(1).

69. Plaintiff is entitled to all of his benefits of employment, including but not limited to, back pay, front pay, health insurance, life insurance, and retirement benefits.

70. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, (Title VII) in an amount exceeding $10,000.00 as a proximate result of Defendant's conduct alleged herein.

71. Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991, 42 U.S.C. § 1981 (a)(1) and (b)(1) in an amount exceeding $10,000.00 as a proximate result of Defendant's conduct as alleged herein, except to the extent limited by law.

72. Plaintiff is further entitled to recover reasonable attorney's fees, the costs and the expenses of this action, and such interest as may be allowed by law.

**RACE DISCRIMINATION IN VIOLATION OF RECONSTRUCTION ERA STATUTES**

73. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 72 set forth fully herein.

74. The actions of Defendant as set forth herein constitute harassment and intentional discrimination on the basis of Plaintiff's race, in violation of the Reconstruction Era Statutes, 42 U.S.C. § 1981.

75. Plaintiff is entitled to all of his lost benefits of employment, including but not limited to, back pay, front pay, health insurance, life insurance, and retirement benefits.

76. Plaintiff is entitled to compensatory damages as provided by the Reconstruction Era Statutes, 42 U.S.C. § 1981, in an amount exceeding $10,000.00 as a proximate result of Defendant's conduct as alleged herein.

77. Plaintiff is entitled to punitive damages as provided by the Reconstruction Era Statutes, 42 U.S.C. § 1981, in an amount exceeding $10,000.00 as a proximate result of Defendant's conduct as alleged herein, except to the extent limited by law.

78. Plaintiff is further entitled to recover reasonable attorney's fees the costs and the expenses of this action, and such interest as may be allowed by law.

## DISABILITY

79. Plaintiff incorporates by reference herein, the allegations set forth in paragraphs 1 through 78 of the Complaint.

80. Defendant unlawfully and intentionally discriminated against Plaintiff by terminating his employment because of his status as a qualified individual with a disability, his history of disability, or being regarded as having a disability is in violation of the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 § 12117, as amended. Plaintiff is entitled to recover his lost employment benefits as set forth in § 706(g) of the Civil Rights Act of 1964, which has been incorporated by reference into the ADA.

81. The Plaintiff is entitled to reinstatement of his job, back pay, interest on back pay, front pay, employment benefits including but not limited to, vacation pay, sick pay, health insurance benefits and life insurance benefits. Plaintiff's losses are in an amount greater than $10,000.00.

82. The Defendant's conduct as described above was willful, malicious, oppressive, wanton and reckless indifference to the federally protected rights of the Plaintiff herein justifying an award of punitive damages in accordance with the provisions of § 1977A of the Civil Rights Act of 1991, 42 U.S.C. § 1981A in an amount greater than $10,000.00, except to the extent limited by law.

## RETALIATION

83. Plaintiff incorporates by reference paragraphs 1 through 81 set forth fully herein.

84. Defendant engaged in retaliation against Plaintiff and terminated Plaintiff's employment because Plaintiff exercised his federally protected rights to be free from race discrimination and disability discrimination in the workplace.

## WRONGFUL DISCHARGE

85. Plaintiff incorporates by reference the allegations of paragraphs 1 through 83 in support of this claim for relief.

86. The termination of Plaintiff from his position was in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1 *et seq.*, which makes discrimination on account of race and disability an unlawful employment practice in North Carolina.

87. Plaintiff is entitled to reinstatement to his job, back pay, interest on his back pay, front pay, and employment benefits, life insurance benefits and damages for emotional distress.

88. Plaintiff's losses are in an amount greater than $10,000.00.

89. Defendant's conduct as described herein was willful, malicious, oppressive, wanton and recklessly in disregard of Plaintiff's rights, so as to entitle Plaintiff to punitive damages under North Carolina law in an amount greater than $10,000.00, except to the extent limited by law.

90. Defendant's managers were aware of, condoned, and participated in the illegal discharge of Plaintiff so as to make Defendant liable for punitive damages, except to the extent limited by law.

91. Plaintiff is also entitled to recover the cost and expenses of this action and such interest as may be allowed by law.

## PRAYER FOR RELIEF

11

Case 1:18-cv-00028-TDS-LPA   Document 1   Filed 01/12/18   Page 11 of 14

**WHEREFORE,** Plaintiff demands a trial by jury of all issues so triable and respectfully prays for Judgment against Defendant as follows:

1. A declaration that the practices and acts complained of herein are in violation of Title VII, ADA, and North Carolina law.
2. An Order enjoining Defendant from engaging in discrimination on the basis of his race and disability.
3. For a money judgment against Defendant for violation of Title VII and the ADA in an amount greater than $10,000.00.
4. For liquidated damages judgment against Defendant for willful violation of Title VII and ADA in an amount exceeding $10,000.00 and equal to the amount awarded for lost employment benefits, except to the extent limited by law.
5. For a money judgement against Defendant for the violation of Title VII and ADA representing all lost benefits of employment and compensatory damages, including but not limited to loss of wages, loss of benefits, loss of status, loss of reputation, emotional distress and inconvenience, for an amount in excess of $10,000.00, which amount shall be determined specifically as the trial of this action.
6. For a money judgement against Defendant representing punitive damages under Title VII and ADA for an amount exceeding $10,000.00, which amount shall be determined specifically at the trial of this action, except to the extent limited by law.
7. For a money judgment against Defendant for wrongful discharge in violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et seq.*, representing all lost benefits of employment and compensatory damages, including but not limited to lost wages, lost employment benefits, loss of status, loss of reputation and inconvenience, for

an amount in excess of $10,000.00 which amount shall be determined specifically at a trial for this action.

8. That the Plaintiff recover the full costs of this action.

9. That the Plaintiff recover pre-judgment interest on his back pay claims.

10. That the Plaintiff recover damages for mental anguish and pain and suffering caused by the Defendant.

11. That the Plaintiff recover his attorney's fees.

12. That the Defendant be ordered to implement procedures and policies to prevent illegal discriminatory activities and that the Defendant be enjoined from committing further violations of Title VII, ADA and North Carolina law, and

13. For such further and other relief as the Court may deem just and proper.

This the 12th day of January, 2018.

                                        s/ Todd J. Combs
                                        Todd J. Combs
                                        N.C. Bar No.: 23381
                                        Attorney for Plaintiff
                                        Combs Law, PLLC
                                        1965 Mecklenburg Hwy
                                        Mooresville, NC 28115
                                        Telephone: 704-799-2662
                                        todd@combslaw.org

NORTH CAROLINA

IREDELL COUNTY

Anthony K. Gray, BEING FIRST DULY SWORN, DEPOSES AND SAYS:

That he is the Plaintiff in the foregoing action; that he has read the foregoing Complaint

and knows the contents thereof, that the matters and things stated therein are true to the best of his knowledge, save and except those matters and things stated upon information and belief, and as to those, he believes them to be true.

This the 12 day of January, 2018.

_____
Anthony K. Gray    AFFIANT

SWORN TO AND SUBSCRIBED before me

this the 12 day of January, 2018

__Jodi Zanolini__ (SEAL)
Official Signature of Notary Public

__Jodi Zanolini__
Printed or Typed Name of Notary Public

JODI ZANOLINI
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
2/23/19

My Commission Expires: February 23, 2019